# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| GREGORY MICHAEL KLAPESKY, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | A-09-CA-882-SS |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of | § | |
| Criminal Justice–Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE SAM SPARKS
      UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner Gregory Michael Klapesky's Amended Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 29), Klapesky's Memorandum and Argument in Support of Application for Writ of Habeas Corpus [28] U.S.C. § 2254 (attached to Document 29), Amended Answer with Brief in Support of Respondent, Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division (Document 31), and Klapesky's Traverse (Document 33).[1]  Klapesky, proceeding pro se, has been granted leave to

---

[1] After the Director filed an answer and a supplemental answer, Resp't's Supp. Answer with Br. in Supp. (Mar. 30, 2010) (Document 20); Resp't's Answer with Br. in Supp. (Feb. 2, 2010) (Document 11), Klapesky moved to amend his petition, seeking to replace the originally filed petition with an amended petition. *See* Mot. for Leave to Amend (July 15, 2010) (Document 27).

proceed in forma pauperis. *See* Order (Dec. 14, 2009) (granting IFP status) (Document 7) . For the reasons set forth below, the undersigned finds that Klapesky's application for writ of habeas corpus should be denied.

STATEMENT OF THE CASE

## I. PROCEDURAL HISTORY

Klapesky challenges the Director's custody of him pursuant to a judgment and sentence of the 26th District Court of Williamson County, Texas, in Cause Number 03-1063-K26. Klapesky was charged with murder, to which he entered a plea of not guilty. 1 C.R. at 8, 266-69.[2] On March 11, 2005, a jury found Klapesky guilty as charged and assessed punishment at life imprisonment. *Id.*

Klapesky's conviction was affirmed by the Third Court of Appeals of Texas. *Klapesky v. State*, 256 S.W.3d 442 (Tex. App.–Austin 2008, pet. ref'd). The Texas Court of Criminal Appeals subsequently refused Klapesky's petition for discretionary review on September 10, 2008. *See Klapesky v. State*, P.D.R. No. 0595-08. Klapesky did not file a petition for a writ of certiorari in the United States Supreme Court.

On August 4, 2009, Klapesky filed an application for state writ of habeas corpus challenging his conviction. *Ex parte Klapesky*, No. WR-72,880-01, at 3. The trial court issued written findings

---

The Court granted the motion, and ordered the Director to file an amended answer. Order (Aug. 25, 2010) (Document 28). Klapesky presents only the claims raised in his amended petition. *See id.* (identifying the claims raised in the original and amended petitions, noting the differences, and recognizing that Klapesky specified that his amended petition replaces his original petition).

[2] [#] C.R. at [#] indicates a reference to a particular volume of the Clerk's Record in the trial court. [#] R.R. at [#] indicates citation to a particular volume of the Reporter's Record. Citations to pleadings in the state-court habeas record appear as *Ex parte Klapesky*, No. WR-72,880-01, followed by a page number.

recommending that the application be denied. *Id.* at 228-35. On November 4, 2009, the Texas Court

of Criminal Appeals adopted the trial court's findings and denied relief. *Id.* at cover (Nov. 4, 2009).

Klapesky filed his original federal habeas petition on December 4, 2009. Orig. Pet. at 9

(Document 1). After the Director filed an answer (Document 11) on February 2, 2010, Klapesky

moved to stay the case in order to return to state court and raise new claims. *See* Mot. to Hold

Habeas Corpus [§] 2254 Pet. in Abeyance to Exhaust State Remedies (Feb. 23, 2010) (Document

14). The Director opposed, Resp. in Opp. to Petitioner's Mot. to Stay with Br. in Supp. (Feb. 25,

2010) (Document 15), and the Court denied the motion. Order (Apr. 16, 2010) (Document 22).

The Director subsequently filed a supplemental answer. Resp't's Supp. Answer with Br. in

Supp. (Mar. 30, 2010) (Document 20). Klapesky moved to amend his petition, seeking to replace

his originally filed petition with an amended petition. *See* Mot. for Leave to Amend (July 15, 2010)

(Document 27). The Court granted the motion, and the Director then filed an amended answer. Am.

Answer with Br. in Supp. (Sept. 15, 2010) (Document 31); Order (Aug. 25, 2010). Klapesky has

abandoned all but those claims raised by his amended petition. *See id.* (distinguishing claims raised

in the original and amended petitions and recognizing that Klapesky specified that his amended

petition replaces his original petition).

## II.  FACTUAL BACKGROUND

The court of appeals summarized the evidence presented as follows:

[Klapesky] and Kali Sansone lived together and then later married in 2001. They had
a son, Phillip, soon thereafter. [Klapesky] was on felony probation for possession of
narcotics and he continued to have difficulties with illegal drugs. He did acquire a
real estate license and started work in that field. [Klapesky] and his wife went to a
marriage counselor in an attempt to save their marriage. They had monetary
problems. The family cars were repossessed because of loans made to [Klapesky].

Kali's parents, Phillip and "Neca" Sansone, began to provide money to Kali, who was working. They purchased a home in Cedar Park and placed the title in Kali's name. The Sansones also purchased a 1994 White Lexus automobile and placed the title in Kali's name.

Sometime in July 2003, a motion to revoke [Klapesky]'s probation was filed and a warrant for his arrest was issued. To avoid arrest, [Klapesky] fled to Mexico with a girl named "Summer." Before leaving the Austin area, [Klapesky] sold a number of items and a boat to finance his trip. Later, [Klapesky] began contacting friends in Texas to send him money for food. Several friends complied with the requests. In early September 2003, due to the lack of money, [Klapesky] returned to Texas. His friend, Elfego Wences, met [Klapesky] at the Mexican border and drove [Klapesky] to Austin. On this trip, [Klapesky] told Wences that he planned to sell the Cedar Park home and build a home in Mexico where he would live permanently. [Klapesky] first stayed in a spare room at the Wences's house, but moved around to different Austin homes of friends. Wences saw [Klapesky] driving a yellow Chrysler car. [Klapesky] returned on one occasion with a woman, not his wife. When Wences learned they were smoking marihuana, he remonstrated with [Klapesky].

John Hernandez, another Austin friend, had purchased the boat from [Klapesky] and later sent money to [Klapesky] in Mexico. On September 19, 2003, Hernandez received a call from [Klapesky] asking for help in moving items from the Cedar Park house. In the early morning hours of September 21, 2003, between 1:00 and 6:00 a.m., Hernandez received several urgent telephone calls from [Klapesky] asking for help in moving. Hernandez testified that on that date, he drove his Toyota Land Cruiser and picked up [Klapesky] at a bus stop near the Wences home. They then drove to the Cedar Park house where [Klapesky] closed the garage doors after Hernandez drove his vehicle inside. He helped [Klapesky] load the vehicle with personal items and baby clothes. He did not see any property belonging to [Klapesky]'s wife, Kali. On the return trip, [Klapesky] used a cell phone and had some methamphetamine and marihuana delivered to them en route, which they both used on the return trip. [Klapesky] told Hernandez that he ([Klapesky]) had been arguing with Kali for three days and had been unable to sleep. At some point, [Klapesky] asked Hernandez if he had ever killed anyone. When Hernandez posed the same question to [Klapesky], he responded that he had never killed anyone "that didn't deserve it." [Klapesky] then stated, "What if I told you I killed my wife?" [Klapesky] related to Hernandez that he loved Kali and wanted to get back together with her, but she was crazy because she had tried to kill him by running over him with a car.

When they arrived at the Wences home, Hernandez saw a white Lexus parked in the driveway. He helped [Klapesky] move the items from his vehicle into a room in the Wences home. Thereafter, Hernandez left the premises.

4

Jessica Wences, Elfego's wife, testified that [Klapesky], in a white Lexus, arrived at her home in the early morning hours of Sunday, September 21, 2003, with his son, Phillip. She took care of Phillip when [Klapesky] left. He later returned with Hernandez. After Hernandez's departure, [Klapesky] began packing items into the Lexus. Jessica Wences saw [Klapesky] trying to place what appeared to be a large metal bar in the Lexus's trunk. When the trunk was opened, she saw something like a greyish-bluish air mattress therein. Unable to get the "bar" in the trunk, [Klapesky] placed it inside the Lexus. [Klapesky] was in a hurry and when the Lexus was packed with items, he left in the Lexus with his son, Phillip, in the back seat.

Eugenio Gamez had worked as a mechanic in his uncle's auto shop and had rebuilt [Klapesky]'s Mustang automobile. At about 8:30 a.m. on September 21, 2003, Gamez received a telephone call from [Klapesky], who asked if he could go to Gamez's house. Gamez agreed, but [Klapesky] did not arrive until noon. He was in a white Lexus automobile with his son, Phillip. [Klapesky] told Gamez that he was going to Mexico and wanted to bury some money in a hole in Gamez's backyard. This somewhat confused Gamez. As they talked, [Klapesky] began to smoke what appeared to Gamez to be methamphetamine. [Klapesky] later took a metal bar out of the Lexus, which appeared to Gamez to be a post hole digger of some kind. Borrowing shovels from Gamez, [Klapesky] started digging in the backyard. Gamez went inside his house. He later returned with a breakfast taco for [Klapesky], and found a five to six foot long and one foot deep hole in his backyard. Gamez told [Klapesky], "You could put a body in there." [Klapesky] responded: "There's nothing I could have did. She wasn't going to let me see my little boy again." Gamez knew [Klapesky]'s wife, Kali. [Klapesky] told Gamez that Kali had been "cheating on him." Gamez became uncomfortable and told [Klapesky] that he (Gamez) had to leave, that his uncle would be coming by, and asked [Klapesky] to come back later. As [Klapesky] drove off, Gamez observed that the rear end of the Lexus was lower than it should be.

Gamez left his house with his family. As he drove to his uncle's house, Gamez saw [Klapesky] at a nearby convenience store. After arriving at his uncle's house, Gamez revealed what had occurred, and his suspicions. Two of the female relatives there called 911 and contacted the police. When Gamez returned home, his family went inside. Gamez then approached [Klapesky] in the Lexus parked on Gamez's property. He observed that [Klapesky] had a six pack of beer and was going through Kali's purse. As [Klapesky] threw items out of the purse, he would say that "she won't have use for this anymore." The police had not arrived, and Gamez was worried about what [Klapesky] would do next. To distract him, Gamez offered him a marihuana cigarette, which [Klapesky] grabbed. About this time, Gamez saw the police vehicle approaching.

Hays County Deputy Sheriff Lenny Martinez testified that he received a dispatch at 4:16 p.m. on September 21, 2003, about a man in a white Lexus with a boy in the car and the man's murdered wife in the trunk. Upon arriving at the Gamez home, Martinez saw the white Lexus, its driver, and a young boy. With his weapon drawn, Martinez ordered [Klapesky] to get out of the Lexus and on his knees. As Martinez got closer to the car's trunk, he smelled the odor of a dead body. [Klapesky] would not consent to a search of the trunk without a warrant. Martinez opened the trunk and found the body of Kali Sansone rolled in an air mattress, wrapped in bed linens and other clothing, and tied with a cut-up garden hose.

At the time of booking, [Klapesky] displayed signs of intoxication: poor eye contact, slurred speech, and poor balance. He also exhibited signs of lack of sleep. At a hospital, [Klapesky]'s blood was taken for testing. His blood alcohol content was low, but he tested positive for marihuana and methamphetamine.

The body of Kali Sansone was transported to the morgue in the same condition it was found in the trunk of the Lexus. Dr. Elizabeth Peacock, Travis County Deputy Medical Examiner, testified that after the autopsy, she determined Kali Sansone was the victim of homicide by manual strangulation. There were pressure points on both sides of the neck but no evidence of any struggle or defensive wounds. It was shown that [Klapesky] was a strong man with a muscular build. Among the items that he removed from the Cedar Park house was his weight-lifting equipment.

*Klapesky*, 256 S.W.3d at 446-48.

## III.   KLAPESKY'S GROUNDS FOR RELIEF

Klapesky raises the following grounds for relief:

1.    His trial counsel were ineffective by failing to call witnesses in his defense. Am. Pet. at 6; Mem. at 2-9 (Claim 1). In the course of this claim, Klapesky also appears to complain about his attorneys' failure to object to the admission of evidence of extraneous offenses or to request a jury charge on extraneous offenses. Mem. at 4-5, 6.

2.    His appellate counsel was ineffective by failing to raise new issues in the motion for new trial. Pet. at 6; Mem. at 9-13 (Claim 2).

## IV.   STATUTE OF LIMITATIONS AND SUCCESSIVE PETITION BAR

The Director does not contend that Klapesky's petition is barred by limitations, *see* 28 U.S.C.

§ 2244(d), or subject to the successive petition bar, *see* 28 U.S.C. § 2244(b). Am. Answer at 7.

**DISCUSSION AND ANALYSIS**

**I.     THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996**

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is defined by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  By its terms, § 2254(d) bars relief on any claim "adjudicated on the merits" in state court, subject only to the exceptions in § 2254(d)(1) and (d)(2).  *See, e.g., Harrington v. Richter*, – U.S. –, 131 S. Ct. 770, 780-81 (2011).  Federal habeas relief may not be granted for claims subject to § 2254(d) unless the state habeas court's decision "was contrary to" federal law then clearly established by the holdings of the Supreme Court, 28 U.S.C. § 2254(d)(1); *(Terry) Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000), "involved an unreasonable application of" such law, 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts" in light of the record before the state court, 28 U.S.C. § 2254(d)(2).

In *Williams*, the Supreme Court explained the "contrary to" and "unreasonable application" provisions of § 2254(d)(1):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a

question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412-13, 120 S. Ct. at 1523. Section 2254(d)(2) likewise commands deference to the state habeas court's factual determinations by precluding relief on any claim that was adjudicated on the merits in state-court proceedings unless the state-court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(2). Moreover, such determinations are presumed to be correct, although a petitioner can rebut this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. *See, e.g., Harrington*, 131 S. Ct. at 780-81. Under § 2254(d), a state court need not cite or even be aware of Supreme Court decisions. *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (*per curiam*)). When a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden is met by showing that there was no reasonable basis for the state court to deny relief. *Id.* This is so whether or not the state court indicates which of the elements in a multi-part claim it found insufficient; as the Supreme Court explained, § 2254(d) applies when a "claim," not a component of one, has been adjudicated. *Id.*

With these principles in mind, the Court turns to the issues raised by the pleadings in this case.

Having independently reviewed the entire state-court record and Klapesky's asserted claims, the Court concludes that part of Klapesky's first claim was not exhausted in state court and is procedurally barred in this Court.  With regard to the remaining portion of his first claim and Klapesky's second claim, the Court finds nothing unreasonable or contrary in the state court's application of clearly established federal law or in its determination of facts in light of the evidence, as discussed below.

### A.    Ineffective Assistance of Trial Counsel in Failing to Call Witnesses (Claim 1)

Klapesky contends that his trial counsel were ineffective by failing to call witnesses "which would have substantiated defendant's affirmative defense," and he specifically points to the omission of Tammy Jordan as a witness.  Am. Pet. at 6; Mem. at 3-7.  He also appears to complain that additional witness testimony at the punishment phase, again specifically by Jordan, would have resulted in a less severe prison term.  *Id.* at 7.  The Director counters with several arguments: (1) Klapesky has not sufficiently exhausted his state remedies with regard to ineffective assistance based on a failure to call witnesses at the punishment phase of trial, as required by 28 U.S.C. § 2254(b) and (c); (2) Klapesky fails to identify potential witnesses other than Jordan, show that such witnesses' testimony would have been favorable, and show that they would have testified at trial; (3) Klapesky failed to provide evidence to the state habeas court to support his contention that any omitted witnesses other than Jordan would have testified favorably at his trial and he is barred from presenting such evidentiary support for the first time in this Court; (4) Jordan's proposed testimony would not have been favorable but would have opened the door to the introduction of evidence regarding Klapesky's aggression toward the victim and other women on multiple, prior occasions,

and Klapesky fails to show that it would have been admissible or that Jordan would have testified at trial; and (5) determinations of which witnesses to call are generally considered matters of trial strategy warranting deference. Am. Answer at 10-20.

In addition, although Klapesky does not appear to state an independent claim of ineffective assistance based on a failure to object to the admission of evidence of extraneous offenses or to request a jury instruction on the consideration of extraneous offenses, he does complain about that failure by his attorneys within his argument regarding ineffective assistance based on a failure to call defense witnesses. Mem. at 4-5, 6. To the extent that he does assert a separate claim, the Director asserts that the claim is not exhausted and it is also procedurally defaulted. Am. Answer at 10-14.

### 1.      Exhaustion and Procedural Default

Klapesky has not sufficiently exhausted his state remedies, as required by 28 U.S.C. § 2254(b) and (c), with regard to his claims that his trial counsel were ineffective by failing to present witnesses at the punishment phase and, to the extent that he raises such a claim, that his trial counsel were ineffective by failing to object to evidence of extraneous offenses or request a jury instruction limiting the consideration of extraneous offenses.

The exhaustion doctrine requires that state courts be given the initial opportunity to address, and if necessary, correct alleged deprivations of federal constitutional rights. *See Castille v. Peoples*, 489 U.S. 346, 349, 109 S. Ct. 1056, 1059 (1989); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982). The guiding rule is that the prisoner must "fairly present" the "substance" of his claim to the state courts. *Picard v. Connor*, 404 U.S. 270, 276, 92 S. Ct. 509, 512-13 (1971); *Anderson*, 459 U.S. at 6, 103 S. Ct. at 277. In order to satisfy the exhaustion requirement, a claim must be presented to the highest court of the state for review, which in Texas is the Texas Court of Criminal

Appeals. *See, e.g., Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985). To proceed before that court, a petitioner must either file a petition for discretionary review, TEX. R. APP. P. 68.1, or an application for a post-conviction writ of habeas corpus, TEX. CODE CRIM. PROC. art. 11.07. In order for a claim to be exhausted, the state-court system must have been presented with the "same facts and legal theory" as the federal habeas claim. *See, e.g., Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006). In addition, the claims must have been presented to the state's highest court in a procedurally correct manner. *Castille*, 489 U.S. at 351, 109 S. Ct. at 1060.

A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the "fairly presented" requirement. *Picard*, 404 U.S. at 275, 278, 92 S. Ct. at 512, 513. Klapesky did not raise claims that his trial attorneys were ineffective by failing to present witnesses at the punishment phase of proceedings and by failing to object to extraneous offenses in his petition for discretionary review or state application for writ of habeas corpus. *See Klapesky v. State*, P.D.R. No. 0595-08, Pet. for Discretionary Rev. (raising only search challanges); *Ex parte Klapesky*, No. WR-72,880-01, at 8-44 (raising ineffective assistance based on failure to call witnesses to support affirmative defense at guilt/innocence phase, failure to raise new issues in motion for new trial, failure to object to admission of evidence from trunk search, failure to object to an attorney's representation, and a challenge to ruling on a motion to suppress evidence from trunk search). In the state habeas court, Klapesky's only witness-related complaint was limited to the absence of defense witnesses at the guilt/innocence phase and the effect on the verdict, and that was the only witness-related claim examined by the state habeas courts. *See Ex parte Klapesky*, No. WR-72,880-01, at 229, 232; *compare Ex parte Klapesky*, No. WR-72,880-01, at 16-25, *with* Mem. at 5-7. Although Klapesky did present a state habeas claim that his trial counsel were ineffective in

not presenting defense witnesses during the guilt/innocence phase to support a potential theory that the victim was the first aggressor, that claim is distinct from his current claim in this Court regarding a failure to call witnesses during the punishment phase. *See Anderson*, 459 U.S. at 6, 103 S. Ct. at 277 ("it is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made") (citations omitted); *Picard*, 404 U.S. at 276, 92 S. Ct. at 512 ("The rule would serve no purpose if it could be satisfied by raising one claim in state courts and another in the federal courts.").

In filing a federal habeas application complaining of ineffective assistance based on punishment witnesses and trial counsel's failure to address extraneous offense evidence through a jury instruction or objection, Klapesky deprived the state habeas court of the opportunity to consider and pass on those claims and failed to satisfy the exhaustion requirements. When a petitioner presents unexhausted claims for federal habeas review, the general rule that a state court must explicitly apply a procedural bar in order for federal review to be precluded does not apply and this Court may determine the claim to be procedurally barred under state law. *Coleman*, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 2557 n.1 (1991). If the state court to which a petitioner would be required to present his unexhausted claims would find those claims to be procedurally barred, the federal procedural default doctrine precludes federal habeas review. *Id.* A petitioner, however, may still obtain federal habeas review of a claim that would be denied by the state court on the grounds of procedural default if he can show cause and actual prejudice for the procedural default or that a failure to address the merits of the federal claim would result in a miscarriage of justice. *Moore v. Roberts*, 83 F.3d 699, 702 (5th Cir. 1996) (citing *Coleman*, 501 U.S. at 750, 111 S. Ct. 2565).

If this Court were to require Klapesky to return to the Texas Court of Criminal Appeals to present his unexhausted claims and satisfy the exhaustion requirement, that court would find those claims to be procedurally barred under the Texas abuse of the writ doctrine. *See* TEX. CODE CRIM. P. art. 11.07 § 4 (prohibiting the consideration of the merits of, or granting relief based on, a writ application filed after the final disposition of an inmate's first state habeas application unless he demonstrates the statutory equivalent of cause or actual innocence); *see also, e.g., Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim, which would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, to be procedurally barred); *Emery v. Johnson*, 139 F.3d 191, 196 (5th Cir. 1997) (same). Klapesky has failed to show cause and actual prejudice for his procedural default and has made no showing that a failure to address the merits of the federal claim would result in a miscarriage of justice. The federal procedural default doctrine thus bars Klapesky from raising his unexhausted claims.[3]

### 2.      Effective Assistance

Klapesky's ineffective-assistance claim that he did raise in state court–that his trial counsel should have called defense witnesses during the guilt/innocence phase–fails to satisfy the established prerequisites for such a claim.

Ineffective assistance of counsel claims are analyzed under the well-settled requirements set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth

---

[3] In any event, to the extent that Klapesky might be considered to have raised an ineffective-assistance claim in state court based on an omitted defense witness during the punishment phase, that claim would fail on the merits. *See infra* n.4 (discussing merits of such a claim).

13

Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S. Ct. at 2064.

For the first requirement, the proper measure of attorney performance is "simply reasonableness under prevailing professional norms." *Id.* at 688, 104 S. Ct. at 2065. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 686-89, 104 S. Ct. at 2064-65. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S. Ct. at 2065. Indeed, the Supreme Court has established that counsel should be "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and cautioned against an "'intrusive post-trial inquiry into attorney performance'" and the "'tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence.'" *Cullen v. Pinholster*, – U.S. –, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 688-90, 104 S. Ct. at 2065-66).

For the second requirement, the question is whether there is a reasonable probability that, absent the alleged error, the result of the proceeding would have been different, a question that must be considered in the context of the entire evidence. *Strickland*, 466 U.S. at 694-95, 104 S. Ct. at

2068-69. A reasonable probability is "'a probability sufficient to undermine confidence in the outcome,'" *Cullen*, 131 S. Ct at 1403 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068), which requires a "'substantial,' just not 'conceivable,' likelihood of a different result," *id.* (quoting *Harrington*, 131 S. Ct. at 791).

Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a substantial likelihood that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Cullen*, 131 S. Ct. at 1403. Because a convicted defendant must satisfy both *Strickland* requirements to demonstrate ineffective assistance, a failure to establish either deficient performance or prejudice makes it unnecessary to consider the other requirement. 466 U.S. at 697, 104 S. Ct. at 2069; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992).

The state habeas court made the following findings in considering and rejecting Klapesky's claim that his trial attorneys should have called witnesses in his defense:

14.    Prior to trial, [trial counsel Russell] Hunt spoke with Tammy Jordan and Lisa Hicks, individuals whose names applicant had given Hunt. (CR.II-286). [Trial counsel Virginia] Greenway spoke with Jordan, Hicks, and a man named Chuck Smith. (CR.II-288). Hunt and Greenway spoke with most of the people whose names applicant gave them as potential trial witnesses. (CR.II-286). The only potential witnesses Hunt and Greenway did not speak with were those who could not be reached. (CR.II-288). None of the witnesses contacted by Hunt and Greenway were able to produce any firsthand knowledge of violent acts committed by the deceased, Kali Sansone. (CR.II-288).

15.    At trial, Hunt did not call any witness to testify regarding acts committed by Sansone that would have showed she was the initial aggressor in the altercation which led to her death or that she had a propensity for violence. (CR.II-286). Hunt did not want to open the door to evidence from the State concerning applicant's aggressive acts toward the deceased and other women on multiple occasions prior to the deceased's

15

death. (CR.II-286, RR.X-198-99). Hunt and Greenway discussed their decision not to offer witness testimony describing the deceased's prior aggressive acts with applicant after the State rested its case-in-chief (CR.II-286). Applicant agreed that their decision not to introduce the evidence. (CR.II-286).

. . .

3.      Hunt and Greenway were not deficient in failing to call witnesses to establish applicant's claim that Sansone was the initial aggressor in the altercation which led to her death. Hunt and Greenway spoke with most of the people whose names applicant gave them as potential witnesses. They were unable to reach the remainder of the people whose names the applicant gave them. None of the potential witnesses Hunt and Greenway contacted had any firsthand knowledge of violent acts committed by Sansone.

4.      Additionally, Hunt and Greenway made a strategic decision at trial not to attempt to establish that Sansone was the first aggressor. They did not want to open the door for the State to introduce evidence related to applicant's aggressive acts toward Sansone and other women prior to Sansone's death. Hunt and Greenway discussed their decision not to offer that type of evidence with applicant at trial. Applicant agreed with their decision not to introduce the evidence.

*Ex parte Klapesky*, No. WR-72,880-01, at 229, 232. Under 28 U.S.C. § 2254(e)(1), the state court's factual findings are entitled to a presumption of correctness. Klapesky fails to meet his burden of rebutting the presumption with clear and convincing evidence.

Klapesky's trial attorneys addressed his ineffective-assistance allegations in affidavits submitted in the state trial court in response to Klapesky's motion for new trial. Hunt stated:

[Klapesky's] affidavit alleges that I provided ineffective assistance of counsel by failing to interview certain defense witnesses who would have testified [to] the decedent's propensity for being violent, her history of having been under a doctor's care for mental health problems, and their assertion that these facts indicated that the decedent was the first aggressor or that Defendant's actions were justified by self-defense. Additionally, the affidavit alleges that I should have questioned the State's witnesses regarding the decedent's "history of violence and mental health issues related to that." These allegations are wholly inaccurate.

Attorneys Hunt and Greenway contacted all of the witnesses whose names had been made available to us prior to trial. Attorney Hunt personally spoke with listed witnesses Tammy Jordan and Lisa Hicks. There was no direct evidence regarding

the decedent's mental health treatment from any of Defendant's witnesses of which I am aware, only conjecture or hearsay evidence which was not admissible.

There were several reasons why Attorney Hunt did not call witnesses to testify that the decedent was the first aggressor, or regarding her propensity for violence or her alleged mental problems. The State had rested their case in guilt-innocence without presenting the extremely damaging extraneous offense evidence regarding Defendant's aggression toward decedent and other women on multiple previous occasions, and they had indicated that they would not do so unless we presented this type of character evidence regarding the decedent. Attorneys Hunt and Greenway discussed this fact with Defendant in the holdover cell, after the State rested their case-in-chief on March 9th, and Defendant agreed with his attorneys that it was a wiser strategy not to invite the Government to admit this extremely damaging evidence against Defendant when the prospective benefit of the evidence was at any rate likely extremely low. This decision and Defendant's decision to join the decision was memorialized at a bench conference on the record.

*Ex parte Klapesky*, No. WR-72,880-01, at 48. Trial counsel Greenway offered similar information

in her affidavit:

Attorneys Hunt and Greenway contacted all of the witnesses whose names had been made available to us prior to trial. Attorney Virginia Greenway personally spoke with listed witnesses Tammy Jordan, Lisa Hicks, and Chuck Smith along with numerous other witnesses whose information was provided by Defendant. Additionally, best efforts were made to contact certain individuals whose names had been provided by Defendant and such individuals could not be located. Witnesses with whom we spoke provided no direct evidence regarding the decedent's mental health treatment except for one witness, Tammy Jordan, who could say only that the decedent had been treated for depression as a teenager. This information was not deemed relevant by defense counsel to Defendant's claims of self defense.

Additionally, the individuals who were contacted based on Defendant's claims that they could corroborate prior acts of violence committed by decedent against Defendant could provide only conjecture or hearsay evidence which was not admissible.

. . .

Defendant agreed with his attorneys that it was a wiser strategy not to invite the Government to admit this extremely damaging evidence against Defendant when the prospective benefit of the evidence was likely to be extremely low in any event. Defendant was fully advised that opening the door to his prior bad acts at this stage

of the case could cause him significant harm and that evidence that may have been presented to back up his claims of self defense was scant, assuming its admissibility. Simply put, the risk far outweighed any potential benefit to Defendant that may have come from such testimony.

*Ex parte Klapesky*, No. WR-72,880-01, at 51-52.

Klapesky fails to demonstrate that this decision by his trial counsel, made with Klapesky's undisputed agreement, *see, e.g., Ex parte Klapesky*, No. WR-72,880-01, at 19, was error and constituted ineffective assistance. The Court must begin with the premise that "under the circumstances, the challenged action[s] might be considered sound trial strategy." *Cullen*, 131 S. Ct. at 1404 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). Moreover, this Court's review of the state habeas court's determination of this claim is "'doubly'" deferential. *Harrington*, 131 S. Ct. at 788 (quoting *Knowles v. Mirzayance*, 556 U.S. –, –, 129 S. Ct. 1411, 1420 (2009)). In addition to the "highly deferential" view that the Court takes of counsel's performance, *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065, the Court must examine the state court's determination of the ineffective assistance claim through the "'deferential lens of § 2254(d).'" *Cullen*, 131 S. Ct. at 1404 (quoting *Mirzayance*, 129 S. Ct. at 1419 n.2).

Keeping in mind that the proper measure of attorney performance is "simply reasonableness under prevailing professional norms," and that judicial scrutiny of counsel's performance must be highly deferential and avoid second-guessing, *Strickland,* 466 U.S. at 688, 104 S. Ct. at 2065, the Court concludes that Klapesky fails to provide clear and convincing evidence that his attorneys committed an error that could not constitute sound trial strategy or fell below the norms of reasonable professional judgment in the circumstances of his trial. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,"

*Strickland*, 466 U.S. at 690-91, 104 S.Ct. at 2066, and that is particularly true in Klapesky's trial circumstances when the witness at issue would have opened the door to negative and damaging testimony. *See, e.g., O'Brien v. Dretke*, No. 05-70006, 2005 WL 3529255, at *6 (5th Cir. Dec. 27, 2005) (rejecting ineffective assistance claim based on omitted witnesses when counsel made strategic decision not to call mental health experts who would offer negative observations of defendant's character and counsel recognized that the testimony would be more harmful than helpful).

Klapesky also fails to show the second *Strickland* requirement, prejudice. To demonstrate the prejudice based on an omitted witness, a petitioner must show that the witness's testimony would have been favorable, and that the witness would have testified at trial. *See, e.g., Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Klapesky provided an affidavit from Jordan regarding her intended testimony, *Ex parte Klapesky*, No. WR-72,880-01, at 59-60 (Aff. of T. Jordan (Oct. 31, 2008)), but fails to demonstrate that her testimony would have been favorable to his defense. If Jordan had testified at trial consistently with her state habeas affidavit, her testimony would have opened the door to "extremely damaging" evidence regarding Klapesky's aggression and violence towards the victim and other women on multiple, previous occasions. *See Ex parte Klapesky*, No. WR-72,880-01, at 48 (Aff. of R. Hunt, Jr., trial counsel (April 28, 2005)). Further, Klapesky does not demonstrate that any of Jordan's testimony would have been admissible. *See id.* (noting Jordan offered only "conjecture or hearsay evidence which was not admissible").

Without a demonstration of error and prejudice, Klapesky fails to rebut the presumption under 28 U.S.C. § 2254(e) that the state court's factual findings were correct and also fails to demonstrate that the state court's decision was an unreasonable application of the clearly established

federal law of *Strickland*, or was contrary to that established law. Accordingly, 28 U.S.C. § 2254(d) and (e), as amended by the AEDPA, bar habeas relief on this claim.[4]

---

[4] In addition, the earlier-referenced ineffective assistance claim based on a failure to call Jordan to testify at the punishment phase in addition to the five witnesses that Klapesky's counsel did call must fail. Paying heed to the deference mandated by *Strickland* and 28 U.S.C. § 2254(d), the Court must presume that Klapesky's trial attorneys might have been using sound trial strategy. Because Klapesky did not submit a witness affidavit specific to potential punishment phase testimony, the Court has considered Jordan's potential testimony based on the affidavit submitted for purposes of the ineffective assistance claim based on her omission as a witness during the guilt phase (which is all the Court may consider because she is the only omitted witness specified by the petition). Excluding the proposed testimony that was inadmissible hearsay or speculation, the most that the proposed testimony would have only offered is that the victim and Klapesky had fought in the past. *See Ex parte Klapesky*, No. WR-72,880-01, at 59-60 (Jordan Aff.). Klapesky fails to show that a decision not to put on such testimony could be considered to be either error or prejudicial, the two requirements of *Strickland*. Even assuming that the potential Jordan testimony could have supported a theory that the victim was the first aggressor–despite the absence of any evidence on the victim of a struggle, *see, e.g., Klapesky*, 256 S.W.3d at 448–Klapesky's theory in the punishment phase for mitigating circumstances or imposing a shorter sentence was explicitly a "sudden passion" theory. Klapesky's counsel advanced that Klapesky acted in reaction to the victim's telling him that she did not want to reconcile and he would not be able to see their son, which is inconsistent with a theory of self-defense that Klapesky now contends is supported by potential Jordan testimony. *See, e.g.*, 11 R.R. at 50; 12 R.R. at 85-88. The jury charge predicated the length of Klapesky's sentence on the occurrence or absence of sudden passion by instructing that

> if the jury unanimously believes by a preponderance of the evidence that the defendant . . . caused the death . . . under the immediate influence of sudden passion arising from an adequate cause, you must assess punishment within the range for a second degree felony. But if you unanimously do not believe that the defendant caused the death . . . under the immediate influence of sudden passion arising from an adequate cause, you must assess the punishment within the range for a first degree felony.

*Ex parte Klapesky*, No. WR-72,880-01, at 401. The charge also defined "sudden passion" and did not include a self-defense theory, which was also not argued in the punishment phase:

> "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

*Id.* As a result, the addition of Jordan's testimony to that of the five defense witnesses at the punishment phase would not have created a substantial likelihood of a different sentence, and cannot

**B.      Ineffective Assistance of Appellate Counsel in Relation to Motion for New Trial (Claim 2)**

Klapesky contends that his appellate counsel was ineffective by failing to raise new issues in his motion for new trial.  Am. Pet. at 6; Mem. at 9-13.  The Director asserts that existing precedent has not settled whether a defendant is entitled to counsel at the motion-for-new-trial phase of trial proceedings, and even if the issue were settled in Klapesky's favor, Klapesky fails to show that his counsel was deficient and that he was prejudiced by counsel error.  Am. Answer at 21.

Since the briefing was filed in this case, the Fifth Circuit recognized the Sixth Amendment right to the assistance of counsel for the motion-for-new-trial stage of proceedings (the post-trial, pre-appeal period) in Texas.  *McAfee v. Thaler*, 630 F.3d 383, 393 (5th Cir.), *pet. for cert. filed*, – U.S.L.W. – (U.S. May 3, 2011) (No. 10-10273).  The Fifth Circuit also held that its decision did not announce a new constitutional rule of law whose application would be barred by the *Teague* doctrine, but instead recognized "an old rule–the right to the assistance of counsel at critical stages of a proceeding–to new facts."  *Id.* at 392 n.8.  Even with the benefit of the *McAfee* decision, Klapesky's claim of ineffective assistance at the motion-for-new-trial stage nevertheless fails because he does not show that the state habeas court unreasonably applied the established law of *Strickland*, or did so in a way contrary to that law, by not concluding that Klapesky's counsel was deficient and that he was prejudiced by counsel error.  *See supra* Section II.A.2.  Moreover, Klapesky's claim fails because he does not rebut with clear and convincing evidence the presumption

---

represent an error, particularly given the circumstances that the prosecution had put on considerable evidence supporting Klapesky's violent, first instigator, and physically aggressive history.  *See Cullen*, 131 S. Ct. at 1403; *Harrington*, 131 S. Ct. at 791-92; *see also* 11 R.R. at 52-200.

that the state habeas court's factual determination underlying this claim was correct. *See* 28 U.S.C. § 2254(e)(1).

In reviewing the state court's judgment, this Court considers the decision of the habeas trial court, which issued findings of fact and conclusions of law. When there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest on the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594-95 (1991). In this case, the Texas Court of Criminal Appeals adopted the trial court's findings and denied relief on this claim. *Ex parte Klapesky*, No. WR-72,880-01, at cover (Nov. 4, 2009). Because the state trial court issued "the last reasoned opinion" on the matter, this Court "looks through" the Texas Court of Criminal Appeals's order to the trial court's decision. *Ylst*, 501 U.S. at 803, 111 S. Ct. at 2594.

The state habeas court entered findings of fact in support of the conclusion that counsel was not deficient.

27.   [Ariel] Payan filed a timely motion for new trial on applicant's behalf. (CR.II-276-77). In the motion for new trial, Payan alleged that applicant was denied his Sixth Amendment right to effective assistance of counsel at trial. (CR.II-276).
. . .
5.   In ground two of the writ application, applicant argues that he was denied his Sixth Amendment right to effective assistance of counsel following conviction when his appellate counsel failed to raise a matter in the motion for new trial that had not already been presented before the trial court before or during the trial.

6.   Payan was not deficient in failing to raise a matter in the motion for new trial that had not been presented before the trial court before or during trial. The single ground alleged in the motion for new trial, that applicant was deprived of his Sixth Amendment right to effective assistance of counsel at trial, was not presented before or ruled on by the trial court during the trial.

*Ex parte Klapesky*, No. WR-72,880-01, at 230, 232. The state court's findings of fact are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1).

Klapesky contends that his counsel did not raise a new issue because the issue of effective assistance of counsel that was raised in the motion for new trial had "already been fully litigated" prior to the new-trial motion. Mem. at 11. In fact, however, all that had occurred prior to the new-trial motion was trial counsel's recitation on the record of the reasons that counsel did not call defense witnesses.

> Mr. Hunt: Your Honor, we wanted to put some information on the record about the reason why we rested at this point. I don't know if you want to do it in chambers or what your pleasure is.
>
> The Court: Matters not at all to me.
>
> Mr. Bradley: Could we just approach the bench?
>
> The Court: Yes.
>
> Mr. Hunt: The evidence we would have presented, if we had presented additional evidence, the Defense's case would have been evidence relating to prior acts of violence between Kali and Mike. I had a discussion with Mr. Bradley about that in the break before we put that evidence on. Mr. Bradley indicated or reminded me that–or told me that if we were to do that he would certainly take that opportunity to present evidence of other bad acts from Mike toward Kali, including an instance where he allegedly tried to drown her, another instance where he had choked another female, some other bad acts which are extremely prejudicial but which would certainly be relevant at that point. So we decided that the only reasonable approach would be not to present additional evidence about that particular issue and, instead, proceed by resting and not presenting any additional evidence. And I think we're doing that to avoid the presentation of this other extremely prejudicial evidence which is going to hurt us a lot. Ms. Greenway and I talked to Mike and he agrees that's the reasonable way to[] proceed. But we wanted to put our reasoning on the record.

10 R.R. at 198-99 (bench conference); *see also* 2 C.R. at 286 (Hunt Aff.). No issue was presented to the court for resolution at that time.

Without a clear and convincing demonstration of error, Klapesky fails to rebut the presumption under 28 U.S.C. § 2254(e) that the state court's factual findings were correct. In addition, Klapesky fails to demonstrate, as required for relief by 28 U.S.C. § 2254(d), that the state court's decision was an unreasonable application of the clearly established federal law of *Strickland*, or was contrary to that established law. Accordingly, for failures under both 28 U.S.C. § 2254(d) and (e), as amended by the AEDPA, habeas relief on this claim is barred.

### RECOMMENDATION

It is recommended that Klapesky's application for writ of habeas corpus be denied.

### CERTIFICATE OF APPEALABILTY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). In cases in which a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner

shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim

of the denial of a constitutional right and that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Klapesky's Section

2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate

to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029,

1034 (2003) (citing *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604). Accordingly, it is respectfully

recommended that the Court shall not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing

objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections.

*Battles v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations

contained in this Report within fourteen (14) days after the party is served with a copy of the Report

shall bar that party from de novo review by the district court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall also bar the party from

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466,

472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

To the extent that a party has not been served by the Clerk with this Report and

Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is

ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return

receipt requested.

SIGNED this 2nd day of June, 2011.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE